IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CV-00677-M

| | |
|---|---|
| PETER S. FARMER, ) | |
| ) | |
| Plaintiff, ) | ORDER |
| ) | |
| v. ) | |
| ) | |
| CHRISTOPHER C. MILLER, Acting ) | |
| Secretary, Department of Defense, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on Defendant's Motion to Dismiss Plaintiff's Complaint [DE 26]. Defendant seeks an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing this case for the Plaintiff's failure to state a plausible claim for relief. For the following reasons, Defendant's motion is granted in part and denied in part.

I. **Background**

A. Plaintiff's Statement of Facts

The following are relevant factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Amended Complaint (DE 24), which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff, a white male, was employed by Defendant from approximately September 2007 to October 2018. Prior to February 2018, Plaintiff was a Supervisory Customer Experience Associate, HPP-02, Hain Shop, Wiesbaden Exchange, Army & Air Force Exchange Service

("AAFES"), Wiesbaden, Germany. From February 24, 2018 – August 24, 2018, Plaintiff was deployed to the AAFES in Al Udeid, Qatar, as a Courier, S/E-03.

From May 2018 to July 2018, Plaintiff participated in an Air Force Office of Special Investigations review into allegations of non-cooperative AAFES management, a hostile work environment, and human trafficking. In early June 2018, Plaintiff also agreed to be a witness in two separate Equal Employment Opportunity ("EEO") complaints filed against his direct supervisor, Robin Chetri. At or about the same time, Plaintiff asked Chetri about an open manager position at the AAFES in Al Udeid. Chetri encouraged Plaintiff to submit a formal request for the job and said he would speak with John Burk (Region Vice President, S/E-05) about Plaintiff's application when Burk arrived at the base in the next few days with the Inspector General ("IG") investigator.

On June 10, 2018, Plaintiff submitted the formal request for the manager position. On June 15, 2018, Plaintiff provided statements in opposition to Chetri and Burk to the IG investigators. That day or the next, the investigators advised Chetri and Burk of their findings, including specific allegations made by Plaintiff. On June 17, 2018, Chetri notified Plaintiff by email that Plaintiff was not selected for the manager position. Chetri also advised Plaintiff that his existing position was not critical, and he would be leaving the AAFES in Al Udeid at the end of his current deployment period. Plaintiff replied, asking to whom he should speak about extending his deployment in Al Udeid, but Chetri never responded.

On June 22, 2018, Plaintiff contacted the EEO office to file a complaint and met with an EEO counselor who helped him complete and sign the necessary paperwork. Starting about this time, Plaintiff's work environment changed: he was required to perform additional duties, including many management duties; his day off was changed so that he could not coordinate travel

2

and time off with the other employees; he was often given multiple assignments that conflicted with each other so that he could not possibly complete everything asked of him; he received tasks from multiple people who were not his supervisor; he was asked to do jobs that he was not qualified to do; and he received aggressive and hostile emails from management. Plaintiff believed management was trying to make his job as difficult as possible by placing an unrealistic workload on him. He decided to attempt to transfer to Fort Bragg, North Carolina to be close to his wife, who was stationed there.

On July 2, 2018, Plaintiff contacted Jason Rosenberg (SVP, Europe, Southwest Asia and Africa Region, NF-06) about "what was going on" in Al Udeid and his efforts to transfer to Fort Bragg. Rosenburg agreed to contact someone at Fort Bragg about a position for Plaintiff but stated he might not be able to locate a management position. That same month, Plaintiff's wife was diagnosed with a serious illness and was set to begin treatments in Chapel Hill, North Carolina beginning on August 15, 2018. Having heard nothing from Rosenberg, on July 25, 2018, Plaintiff contacted him again; Rosenberg stated that Bill Schoffner, General Manager at Fort Bragg, was working on a position for him and that Plaintiff should contact Schoffner when he arrived at Fort Bragg after his wife's treatments. Plaintiff contacted the EEO counselor he had met on June 23, 2018, and advised him that he decided to take a transfer and not pursue the complaint he had filed.

Plaintiff's deployment to Al Udeid was set to end on August 22, 2018, and he requested that he be permitted to leave a week early and travel to North Carolina. He was granted permission to leave on August 6, 2018, to be with his wife. Plaintiff arrived at Fort Bragg on August 7, 2018, and learned Schoffner was unavailable; later, Schoffner emailed Plaintiff directing him to make an appointment with a Human Resources Manager ("HRM") at Fort Bragg and to stop by Schoffner's office and introduce himself when he arrived. Plaintiff met with the HRM at Fort

Bragg on August 20, 2018, but he was informed that no positions were available. Over the next several weeks, the HRM advised Plaintiff that no open positions were available at Fort Bragg.

Plaintiff's leave from his duty station in Wiesbaden, Germany, was set to end on September 14, 2018. In early September, Plaintiff contacted his supervisor and requested that he be allowed to use the remainder of his six weeks of leave. That request was denied, purportedly because it was not in the best interest of the AAFES. Plaintiff's supervisor advised that at the end of his existing leave period, he would be in a Leave Without Pay status if he remained at Fort Bragg to wait for a position there. Plaintiff was encouraged to resign from his current job and take any open position (even part time or a position with no benefits) at Fort Bragg. However, Plaintiff responded that he needed employment with medical insurance due to his wife's serious illness treatments and ongoing care.

Toward the end of September 2018, the HRM at Fort Bragg contacted Plaintiff about an open position in Loss Prevention. However, the posting online reflected that this position paid nearly 2/3 less than his existing salary. Plaintiff attempted to contact the HRM about the position, but she did not respond to his messages. After a few days having no response, Plaintiff tried to apply for the position online, only to learn that it had been deleted from the website. When Plaintiff was finally able to contact someone in Human Resources, she advised that the job was closed to internal applicants and, if he wanted to apply, he would need to resign from his current job and apply as an external applicant.

Near the end of October 2018, Plaintiff's manager in Wiesbaden, Andrew Dillahunty, asked Plaintiff to resign so he could fill Plaintiff's slot. Plaintiff advised Dillahunty that he had a lead on a position at Fort Bragg and needed a little more time. A few days later, Dillahunty called again to ask whether Plaintiff planned to return if he was unable to obtain employment at Fort

Bragg. Plaintiff said he hoped it would not come to that but would likely take retirement rather than return to Germany.

The same Loss Prevention job reappeared on the internal applicant website in November 2018; Plaintiff immediately applied for it and was denied. Shortly thereafter, Plaintiff saw an internal opening for a Stock Room Manager position and Plaintiff immediately applied. This time, he made the short list selection. When Plaintiff asked the HRM when they planned to interview the short list candidates, she stated that she was unaware he was on the short list but if the General Manager wanted to interview him, he would be contacted.

On November 15, 2018, as he did every day, Plaintiff attempted to sign into his AAEFS email account and the internal job site for open positions. On this day, however, his email credentials were invalid. After contacting the help desk, Plaintiff was advised that there was an "HR block" on his account. Plaintiff contacted Human Resources the following day and was informed that although he was on the transfer waiting list, he had been terminated by Wiesbaden for job abandonment and he would need to contact Wiesbaden for any resolution.

On Monday, November 19, 2018, Plaintiff contacted the HRM in Wiesbaden to ask why he had been terminated without notice. She claimed to have sent him an email, but Plaintiff never received it. At his request, she forwarded him a copy of this email to his personal email account; he saw that this email was sent on October 29, 2018, to an old email address that had not been used for over a decade. At all times, AAFES had Plaintiff's physical and mailing address, phone numbers, and official email address. He had been in regular contact with his managers in Wiesbaden throughout October and into November 2018. No one at AAFES ever contacted Plaintiff with notice of his impending termination using any email, mailing address, or phone number that had been otherwise used to communicate with him.

Following notice of his termination, Plaintiff attempted to apply for his retirement benefits. However, he was told he was ineligible because he had been terminated. In addition, on January 15, 2019, Plaintiff received an automated email that he had not been selected for the Stock Room Manager position.

Plaintiff contacted EEO Counselor Julie M. Humphrey on December 6, 2018, and had his initial meeting with her on December 10, 2018. The parties attempted to resolve Plaintiff's issues in alternative dispute resolution but were unsuccessful. Consequently, a Notice of Right to File was issued to Plaintiff on January 22, 2019, and on February 2, 2019, Plaintiff filed with the AAFES a Complaint of Discrimination against Defendant alleging unlawful retaliation. After the investigation was completed, Plaintiff requested a final agency decision by AAFES on August 22, 2019. The Final Agency Decision found against Plaintiff, and he timely appealed that decision to the Office of Federal Operations. On September 17, 2020, the EEOC Office of Federal Operations upheld the Final Agency Decision.

B.  Procedural History

Plaintiff initiated this action on December 15, 2020, alleging harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). On June 3, 2021, Defendant filed a motion to dismiss the Complaint and on June 7, 2021, filed a motion to stay discovery pending a decision on the motion to dismiss. Magistrate Judge Numbers granted the motion to stay. On June 28, 2021, Plaintiff filed a response to the motion together with the operative Amended Complaint that alleges harassment and retaliation in violation of Title VII. Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, the court accepted the amended pleading and denied as moot Defendant's motion to dismiss.

On July 11, 2021, Defendant filed the present motion to dismiss the Amended Complaint,

6

arguing that Plaintiff failed to exhaust his harassment claim and certain portions of his retaliation claim, and that Plaintiff fails to state plausible claims of unlawful harassment and retaliation. Plaintiff responded on July 30, 2021, countering that his harassment and retaliation claims are fully exhausted under the continuing violation theory and that he has pled sufficient facts to state plausible claims of Title VII harassment and retaliation. Defendant did not file a reply in support of its motion.

## II. Legal Standards

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the pleading and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the non-movant's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). *Twombly*'s plausibility standard requires that the non-movant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of

7

illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Courts must draw all reasonable inferences in favor of the non-movant. *E.I. du Pont de Nemours*, 637 F.3d at 440.

## III. Analysis

Defendant contends that Plaintiff has failed to exhaust his administrative remedies concerning any discrete act of harassment or retaliation alleged to have occurred prior to October 22, 2018. In addition, Defendant argues that Plaintiff fails to plausibly allege that his termination of employment was taken in retaliation for his participation in the Special Investigations review and IG investigation and for providing statements regarding two EEO complaints against his supervisor, Chetri, and Chetri's supervisor, Burk. Finally, Defendant asserts that Plaintiff fails to allege his work environment was sufficiently hostile or abusive to support a Title VII claim.

### A. Exhaustion

"Title VII of the Civil Rights Act of 1964 creates a right of action for both private-sector and certain federal employees alleging employment discrimination on the basis of race, color, religion, sex, or national origin."[1] *Campbell v. Geren*, 353 F. App'x 879, 881 (4th Cir. 2009)

---

[1] The parties appear to agree that Plaintiff is a "certain" federal employee entitled to sue under Title VII. The statute also permits an employee to sue for adverse employment actions taken "because

8

(quoting *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006)). Before bringing suit, a federal employee must consult an agency EEO counselor within forty-five days of the discriminatory act to attempt informal resolution. *Id.* (citing 29 C.F.R. § 1614.105(a)(1) (2008)); *see also Webster v. Johnson*, 126 F. App'x 583, 586–87 (4th Cir. 2005). A plaintiff's failure to consult an EEO counselor within the regulatory time period requires dismissal of his claims for failure to exhaust administrative remedies. *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004)[2] (citing *Zografov v. Veteran's Admin. Med. Ctr.*, 779 F.2d 967, 968-69 (4th Cir. 1985)). "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).

The allegations reflect that Plaintiff consulted an EEO counselor on June 23, 2018 and December 6, 2018; after the June consultation, Plaintiff withdrew his complaint. Therefore, Plaintiff has exhausted his claims arising from the December 6, 2018 consultation, for which he alleges Title VII violations that occurred on or after October 22, 2018.

Defendant asserts that the court must dismiss any discrete act of retaliation that Plaintiff alleges occurred before October 22, 2018. However, Plaintiff's Amended Complaint clearly alleges two claims for relief: (1) hostile work environment (or, "harassment") in retaliation for protected activity, and (2) termination in retaliation for protected activity. Am. Compl. at 8-9, DE 24.[3] No party disputes that Plaintiff's employment termination occurred after October 22, 2018;

---

he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. *See* 42 U.S.C. § 2000e-3.

[2] *Khoury* – which addressed a Rule 12(b)(1) dismissal – was decided before the Supreme Court determined that Title VII's charge-filing precondition to suit, requiring that a charge be filed with the EEOC within a specified period, was not a jurisdictional requirement. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850, 204 L. Ed. 2d 116 (2019).

[3] To the extent the Plaintiff argues he suffered discrete instances of Title VII retaliation when "he was denied open positions with the agency that he was well-qualified for" (Resp. at 10, DE 29), the court finds Plaintiff failed to put Defendant on notice of any such claim(s) as they were not

9

thus, the court must determine whether Plaintiff exhausted his administrative remedies for his harassment claim.

Defendant argues that actions alleged to have taken place in Qatar in July and August 2018 are separate and distinct from actions taken at Fort Bragg in August 2018 through January 2019 and from actions by persons in Germany in October 2018. Plaintiff counters that, under a continuing violations theory, he sufficiently alleges "the same ongoing pattern of behavior related to the same legally protected activity." Resp. at 9, DE 29. The court finds it need not make this determination because, even if Plaintiff is correct, he fails to state a plausible claim of harassment in violation of Title VII.

B.  Plausibility

Defendant asserts that Plaintiff fails to state plausible claims for retaliatory termination and harassment. Plaintiff counters that his allegations meet all of the required elements for the claims.

The court notes that, in advancing their positions, the parties cite "required elements" of the Plaintiff's claims, which are typically used to determine whether a plaintiff, relying on indirect evidence to prove his claims, has demonstrated genuine issues of material fact sufficient to survive summary judgment pursuant to Rule 56. *See Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 649-50 (4th Cir. 2021). These "required elements" constitute what has been characterized as a "prima facie" case, which a Title VII plaintiff must prove to shift the burden of production to the defendant. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019, 206 L. Ed. 2d 356 (2020) ("Under [*McDonnell Douglas*], once a plaintiff establishes a prima facie case of [ ] discrimination through indirect proof, the defendant bears the burden of producing a [ ]neutral

---

stated as discrete acts in the claims for relief nor alleged as separate claims for relief in the Amended Complaint. *See Iqbal*, 556 U.S. at 678-79.

10

explanation for its action, after which the plaintiff may challenge that explanation as pretextual.") (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257–258 (1981)).

However, "an employment discrimination plaintiff need not *plead* a prima facie case of discrimination . . . to survive [a] motion to dismiss, because the prima facie case . . . is an evidentiary standard, not a pleading requirement that may require demonstrating more elements than are otherwise required to state a claim for relief." *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584 (4th Cir. 2015) (internal quotation marks and citation omitted) (emphasis added). Therefore, "the ordinary rules for assessing the sufficiency of a complaint [including Federal Rule of Civil Procedure 8(a)(2)] apply" and, in accordance with *Iqbal* and *Twombly*, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by" Title VII. *Id.* at 585.

1. *Harassment Claim*

The Supreme Court instructs that a hostile work environment prohibited by Title VII is one that is "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 158 (4th Cir. 2018) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To state a plausible claim of retaliatory hostile work environment, a plaintiff must allege "'(1) he experienced unwelcome harassment; (2) the harassment was [in retaliation for protected conduct]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.'" *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 789 (D. Md. 2020) (quoting *Wells v. Gates*, 336 F. App'x 378, 387 (4th Cir. 2009) (alteration in *Wells*)).

11

Defendant argues that Plaintiff fails to allege the second and third elements, which are necessary to demonstrate a violation of the statute. To show that conduct was sufficiently severe or pervasive to support a harassment claim under Title VII, a plaintiff "must demonstrate not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 368 (4th Cir. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001)). In determining whether a reasonable person would perceive an environment as hostile, courts should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* "[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019) (citing *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). Evidence of mere "rude treatment" or "callous behavior" ordinarily does not suffice to create a hostile work environment. *Jessup*, 23 F.4th at 368 (citing *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16).

In *Jessup*, the court found the following evidence insufficient to demonstrate an objectively hostile work environment under the Americans with Disabilities Act ("ADA"): plaintiff was (1) declined a meeting with the company president when he was preparing to return from leave; (2) transferred to a different position upon his return; (3) given a "below expectations" performance evaluation; (4) told by the president that he would have been a "risk" to the company because of his health; and (5) required to meet a sales quota that was increased by $2 million. *Id.* at 368-69.[4] The court finds that, like the plaintiff in *Jessup*, even if Plaintiff's allegations suffice to show he

---

[4] The Fourth Circuit analyzes hostile work environment claims under the ADA the same as those under Title VII. *See id.*

12

subjectively perceived his work environment as hostile, he fails to plausibly allege that a reasonable person would perceive it as such.

Summing up his allegations, Plaintiff asserts that managers for Defendant imposed on him an increased and "impossible" workload for several weeks before his deployment ended, denied him positions to which he applied (but also made calls to help him find a position), denied his requests to extend his deployment and leave (but also granted early leave), asked him to resign if he was not planning to return to Wiesbaden, failed to notify him of his termination,[5] and denied him retirement benefits following his termination. While the conduct alleged from June 17-August 6, 2018, appears to have occurred more frequently, after Plaintiff arrived at Fort Bragg on August 7, the conduct occurred much less frequently: he was informed no positions were available in late August and September; denied extended leave in September; asked to resign in late October; denied a position and learned about his termination in November; denied retirement benefits in December/January; and denied a position in January.

The court finds the alleged conduct is not "pervasive" as necessary to state a plausible Title VII claim. *See Perkins*, 936 F.3d at 208 (4th Cir. 2019) ("[S]imple teasing, offhand comments, and *isolated incidents* (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir.

---

[5] "Termination of employment is a 'discrete act,' which is 'different in kind' from a claim that an employer has maintained or permitted a hostile work environment." *Saunders v. Metro. Prop. Mgmt., Inc.*, 806 F. App'x 165, 170 (4th Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "A hostile work environment claim arises from 'severe or pervasive' harassment based on the employee's [protected activity]. The discrete act of job termination does not constitute 'severe or pervasive' harassment . . . ." *Id.* (citing *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019)). Although some of the other conduct Plaintiff alleges may be construed as "discrete acts," the Plaintiff did not allege these as separate claims and, thus, the court considers them as Plaintiff alleges for his harassment claim.

13

2015) ("To be sure, viable hostile work environment claims often involve repeated conduct.").

Further, Plaintiff alleges nothing indicating that this conduct was physically threatening or humiliating, or unreasonably interfered with his ability to perform his job; Plaintiff performed no job duties after August 6, 2018, and he does not allege that the increased workload and "hostility" he experienced in Al Udeid prior to his departure caused him to fail to do his job or to be written up, reprimanded, or otherwise admonished for failing to complete his duties. The court finds that, while the Defendant's actions against Plaintiff could be perceived by a reasonable person as upsetting, disappointing, and unfair, they do not rise to the level of severe or pervasive necessary to state a plausible Title VII hostile work environment claim. *See Mallik v. Sebelius*, 964 F. Supp. 2d 531, 548 (D. Md. 2013) ("courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance") (citation omitted); *cf. Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (plaintiff "present[ed] a strong claim for hostile work environment" where, in four months, she experienced (1) disparaging jokes about gays and lesbians; (2) comments about herself and a Jacuzzi fantasy; (3) comments about herself and group sex fantasy; (4) questions about her underwear; (5) comments about sexual relations with another African–American woman; (6) additional inquiries about her sitting on a lap and Jacuzzi fantasy; (7–10) several incidents of fondling her leg under a table; (11) forcible kissing; and (12) more propositions to join in a Jacuzzi fantasy); *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (harassment claim upheld where, in five months at a police academy, the plaintiff "heard her fellow recruits brazenly and repeatedly describe a sexual encounter with a sixteen year-old girl" and "heard recruits and instructors make dozens of references to women as 'bitches,' 'crazy,' 'white trash,' 'ghetto,' and 'prostitutes,' was called a 'bitch' herself by an instructor, and

was consistently subjected to selective taunting"); *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 298 (4th Cir. 2004) (plaintiff's evidence of supervisors' repeated use of racially offensive terms such as "n----r" and "monkey" was sufficient for a jury to find severe or pervasive harassment); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182-84 (4th Cir. 2001) (plaintiff demonstrated harassment was severe and pervasive where he was exposed on a "continuous daily" basis to blatantly racist slurs).

As Plaintiff fails to allege a plausible claim that Defendant's actions taken against him after he engaged in protected activity was severe or pervasive, the court grants Defendant's motion to dismiss Plaintiff's first claim for relief.

2. *Termination Claim*

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. Mindful of the admonition in *McCleary-Evans*, the Fourth Circuit determined that a plaintiff alleging Title VII retaliation is required to "show (1) that he engaged in protected activity; (2) that his employer took an adverse action against him; and (3) that a causal connection existed between the adverse activity and the protected action." *Parker v. Ciena Corp.*, 787 F. App'x 817, 820 (4th Cir. 2019) (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 578 (4th Cir. 2015)) (brackets omitted). The court explained that, while a Title VII plaintiff need not plead facts that constitute a prima facie case to survive a motion to dismiss, the plaintiff is "required to plead sufficient facts to allege he engaged in a protected activity; without engaging in a protected activity, there is no basis to conclude that the [defendants]

15

could have engaged in unlawful retaliation." *Id.* at 820 n.5 (citing *McCleary-Evans*, 780 F.3d at 584-85). Likewise, without facts supporting an adverse action and a causal connection, the court cannot determine whether a plaintiff has alleged facts sufficient to satisfy the elements of Title VII retaliation: "discriminat[ion] . . . because [of] . . . oppos[ition] . . . or participat[ion]." See 42 U.S.C. § 2000e-3.

Here, Defendant contends that Plaintiff fails to plausibly allege an adverse action and a causal connection. The court has already found that Plaintiff's second claim for relief identifies his termination as the adverse action on which he relies for the claim. Defendant does not dispute that a termination of employment is an adverse action for purposes of a Title VII retaliation claim. *See* Memo. at 19-20, DE 27. Thus, the court must determine whether Plaintiff plausibly alleges his termination occurred because of his participation in the Air Force Office of Special Investigations review, EEO complaints, and IG investigation.

Notably, in addressing an order granting summary judgment, the Fourth Circuit has determined that the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), which found that causation for a retaliation claim requires a "but for" showing, is limited to cases in which direct evidence is used to prove a Title VII retaliation claim. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). The court also found, however, that when a plaintiff seeks to use the *McDonnell Douglas* framework to prove her claim, the causation standards are different at the prima facie stage and the pretext stage: the "*McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action" but "the burden for establishing causation at the prima facie stage is 'less onerous.'" *Id.* at 251-52.

This court finds that it need not determine whether a "less onerous" standard applies to a

16

Rule 12(b)(6) analysis; the Fourth Circuit's opinions in *McCleary-Evans* and *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376, 209 L. Ed. 2d 122 (2021), provide that allegations "constitut[ing] only speculation as to [the decisionmaker's] motivation" are insufficient under Rule 12(b)(6). *Bing*, 959 F.3d at 618 ("The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias.") (citing *McCleary-Evans*, 780 F.3d at 586).

In this case, Plaintiff argues that "temporal proximity" satisfies the causation element. "An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). Plaintiff alleges that he engaged in protected activity from May-July 2018 and was terminated in October 2018[6]; thus, the allegations reflect a temporal period of approximately three months. The Fourth Circuit has determined that "shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link." *Id.* at 127. In other words, "[i]n cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Tutt v. Wormuth*, No. 19-2480, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). The court finds that Plaintiff's allegations are sufficient to demonstrate the existence of "other evidence of a causal

---

[6] The Amended Complaint does not state the actual date of termination; the allegations reflect that Plaintiff learned of his termination on November 15, 2018, and eventually received an email dated October 29, 2018, notifying him of his termination. Am. Compl. at ¶¶ 42, 45. In his response brief, he states that he was terminated in December 2018. Resp. at 13. Taking the allegations as true and construing them in favor of the Plaintiff, the court assumes the termination occurred in late October 2018.

17

link."

Plaintiff alleges he engaged in protected activity by providing statements against his supervisor, Chetri, and Chetri's supervisor, Burk, in aid of a special investigations review and two EEO complaints. Immediately after investigators informed Chetri and Burk of Plaintiff's statements, Chetri denied Plaintiff's application for a manager position for which he was qualified, denied Plaintiff's request to extend his deployment, and significantly increased his workload. Plaintiff determined to transfer to Fort Bragg and began searching for a new position. For weeks, he was told no positions were available despite assistance from Rosenberg and Schoffner. Plaintiff applied for at least two positions and was denied. Meanwhile, his supervisor in Wiesbaden, Dunthally, asked Plaintiff to resign and, when Plaintiff told Dunthally that he would probably retire before returning to Germany, Plaintiff was terminated without notice for "job abandonment." Finally, after learning he had been terminated, Plaintiff attempted to apply for retirement benefits but was denied.

While Defendant's alleged actions against Plaintiff from June 2018-January 2019, taken as true, may not rise to the level of an abusive, hostile work environment, they certainly reflect a feeling of "ill-will" toward the Plaintiff. *See Tutt*, 2021 WL 4076729, at *2 ("Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation.") (citation omitted). The court recognizes that managers in a workplace, particularly when an employee is seeking a new position, talk to each other. In fact, any good manager who reviews a prospective employee's background will contact the employee's current and/or previous supervisor(s) to discuss the employee's work performance. Taking Plaintiff's allegations as true and construing all inferences in the light most favorable to the Plaintiff, including a probability that Chetri and/or Burk spoke with Dunthally and/or any prospective

18

manager or human resources representative, the court finds Plaintiff's allegations supply the "other evidence of a causal link" sufficient to demonstrate a plausible claim of Title VII retaliation. *Tutt*, 2021 WL 4076729, at *2 ("[i]f [a plaintiff's] explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation.") (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)) (brackets in original).

## IV. Conclusion

Taking Plaintiff's allegations as true and construing them in his favor, the court finds Plaintiff fails to state a plausible claim that the alleged "harassing" conduct was severe or pervasive sufficient to demonstrate a hostile work environment under Title VII. At the same time, the court finds Plaintiff's allegations sufficient to state a plausible claim that his termination was motivated by his protected activity. Accordingly, the court GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss [DE 26]. Plaintiff's first claim for relief is DISMISSED. The stay of proceedings imposed on June 25, 2021, is LIFTED pursuant to the order issued by Magistrate Judge Robert T. Numbers, II (DE 20) and the case shall proceed on Plaintiff's second claim.

SO ORDERED this 21st day of March, 2022.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE